UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:20-cr-00237-JMS-TAB-1 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| ADRIAN AMMONS | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cr-00237-JMS-TAB |
| | ) | |
| ADRIAN AMMONS, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Adrian Ammons (01) has filed a motion seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). [Filing No. 152.] For the reasons explained below, his motion is **DENIED**.

**I.**
**BACKGROUND**

On November 22, 2021, Mr. Ammons pled guilty to one count of Conspiracy to Possess with Intent to Distribute and Distribute Controlled Substances in violation of 21 U.S.C. §§ 846 and 841(a)(1). [Filing No. 120.] The offense conduct is summarized as follows:

> [O]n February 25, 2020, Individual #1 placed and recorded a call to Fermon Ammons ordering four ounces of methamphetamine and one ounce of heroin. Intercepted calls indicated the next person Fermon Ammons contacted was Adrian Ammons. During the call, at approximately 1:30 p.m., Fermon conveyed to Adrian he was ready for Adrian. Adrian then told Fermon to give him about an hour. In a call at approximately 3:06 p.m., Adrian indicated he was 15 minutes away. Adrian then met with Fermon at Fermon's residence…and delivered methamphetamine and heroin to Fermon, before Fermon met Individual #1 for the controlled buy. During the controlled buy, Fermon supplied Individual #1 with 102.7 grams of methamphetamine and approximately 31 grams of a mixture or substance containing a detectable amount of heroin.
>
> On February 28, 2020, at approximately 4:36 p.m., Adrian indicated in a call he needed the remaining balance Fermon Ammons owed for heroin. Fermon responded they would split it up before the next weekend, but that Adrian could

> come get half that day. Later calls between Adrian and Fermon indicate they decided they would meet the next day.
>
> On February 29, 2020, at approximately 3:45 p.m., Adrian arrived at Fermon's residence…to pick up drug proceeds.
>
> On March 04, 2020, during a call at approximately 11:48 a.m., Adrian asked Fermon if his customer was going for that same pound at that moment. Adrian reminded Fermon that he spent $3,500.00 on the pound. Fermon confirmed his customer was going to buy the pound of methamphetamine that day.
>
> Also, on March 24, 2020, during a call at approximately 7:35 p.m., Adrian and Fermon discussed how the Coronavirus was making things difficult, that the heroin was stuck in Mexico, and the methamphetamine prices were about to go up.
>
> On March 24, 2020, Fermon supplied Individual #1 with 363.2 grams of methamphetamine during a controlled buy at Fermon's residence….
>
> On September 30, 2020, Adrian Ammons was arrested. DEA located $4,522.00 in U.S. currency and two cellular telephones, one of which was a flip style phone with a telephone number written on a label on the back, on Adrian's person. In his vehicle, DEA located 7 cellular telephones, 5 of which had handwritten telephone numbers with California area codes on labels on the backs of the phones.

[Filing No. 114 at 6-7.] During the search of a residence, DEA located three bags belonging to Adrian, which contained a total of 4,957 grams of methamphetamine, a Glock magazine with 15 rounds of ammunition, a Glock drum magazine with 19 rounds of ammunition, and two medication bottles with Adrian Ammons' name on them. [Filing No. 114 at 7.] In the same room as the bags, DEA also located a vacuum-sealed bag containing 895.7 grams of a mixture or substance containing fentanyl and in the front room of the residence, DEA located a digital scale with residue, two boxes of latex gloves, 3.5 grams of cocaine base, and an unloaded Glock 9 mm handgun. [Filing No. 114 at 7.]

Mr. Ammons faced a guideline range of 188 to 235 months. [Filing No. 114 at 23.] The Court sentenced him to 180 months of imprisonment followed by 10 years of supervised release. [Filing No. 123.] The Bureau of Prisons ("BOP") currently reports Mr. Ammons' anticipated

release date (with good-conduct time included) as September 27, 2033. https://www.bop.gov/inmateloc/ (last visited April 10, 2025).

Mr. Ammons filed a Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) on September 27, 2024. [Filing No. 152.] He argues that he establishes extraordinary and compelling reasons for compassionate release because: (1) his sentence reflects a sentencing disparity because it was determined using actual methamphetamine guidelines; and (2) he suffers from various health issues. [Filing No. 152 at 6-11.] The Government opposes the motion, [Filing No. 157], and Mr. Ammons filed a reply, [Filing No. 161]. The motion is now ripe for the Court's consideration.

## II.
### DISCUSSION

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Yet under one exception to this rule, a court may reduce a sentence "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," if it finds that there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i).

The Sentencing Commission has set forth the following considerations when evaluating a request for compassionate release: First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement"; and second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(1)(A) and (a)(2). If a court finds that extraordinary and compelling reasons exists and that the defendant is not a danger to the safety of any other person or to the community, it goes on to consider the sentencing factors in 18 U.S.C. § 3553(a), "to the extent that they are applicable." U.S.S.G. § 1B1.13(a).

4

The Seventh Circuit has held that district courts have broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). The district court must "consider[] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction," *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). On this point, the United States Sentencing Commission recently amended the Guidelines Manual to identify several new circumstances as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13 (Nov. 2023).

### A.  Actual Methamphetamine Sentencing Disparity

Mr. Ammons first argues that extraordinary and compelling reasons exist for compassionate release because his guidelines range was determined using actual methamphetamine guidelines, which is "a practice that is antiquated and results in overly harsh sentences." [Filing No. 152 at 6.] He notes that "[t]he underlying theory behind increasing a defendant's sentence based on drug purity is found in the comments of U.S.S.G. § 2D1.1, which states that 'since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs.'" [Filing No. 152 at 6-7 (quoting U.S.S.G. § 2D1.1 cmt. n. 27(c)).] Mr. Ammons asserts that the price of pure methamphetamine has dropped since 2017 and the purity of methamphetamine continues to increase, so "the meth became purer as the price of meth dropped, which means that it has become more and more common as it is significantly cheaper to obtain compared to what it would cost about 12 years ago." [Filing No. 152 at 7-8.] He argues that "if

the Court were to consider the guidelines without respect to concentration levels, his base level offense drops to 34," which would ultimately lead to a guideline range of 121 to 151 months. [Filing No. 152 at 10.]

In its response, the Government argues that Section 1B1.13(b)(5) does not provide relief for sentencing disparities and that, while Section 1B1.13(b)(6) does, Mr. Ammons does not qualify for relief under that provision because he has not served more than 10 years of his term of imprisonment. [Filing No. 157 at 5.] It contends that there have been no changes in the law that would lead to a different guidelines calculation, which was a "mandatory minimum sentence of 15 years – a result of [Mr. Ammons] having possessed well over 50 grams of pure methamphetamine and having been previously federally convicted of a serious drug felony." [Filing No. 157 at 5.] The Government also notes that the Court imposed a 180-month sentence, which was a downward departure from the guidelines range. [Filing No. 157 at 6.] It argues further that Mr. Ammons seeks to extend Supreme Court precedent relating to crack versus power cocaine to cases involving methamphetamine and that, in any event, "a motion for compassionate release is not the proper pathway to challenge a sentence's substantive reasonableness," but rather "such claims must be made through direct appeal or a 28 U.S.C. § 2255 motion." [Filing No. 157 at 6-7.] The Government notes that Mr. Ammons waived his right to a direct appeal in his plea agreement, and argues that he cannot use a motion for compassionate release to circumvent that waiver. [Filing No. 157 at 7.] Finally, the Government argues that Mr. Ammons did not raise any of the arguments he now raises at his sentencing. [Filing No. 157 at 7-8.]

Mr. Ammons argues in his reply that § 1B1.13(b)(5) provides relief in its "Other Reasons" catchall provision and that his sentencing disparity is "not due to a change of law [as addressed in § 1B1.13(b)(6)], but is in regard to a contemporaneous disparity that has been found to be a valid

claim under section (b)(5) coupled with other circumstances, making a compelling and extraordinary circumstance." [Filing No. 161 at 3.]

Section 1B1.13(b)(5) of the Sentencing Guidelines provides that extraordinary and compelling reasons for compassionate release exist when "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4) [relating to the defendant's medical condition, age, family circumstances, and whether he was a victim of abuse], are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). Section 1B1.13(b)(6) specifically addresses an unusually long sentence – the ground that Mr. Ammons relies on here – and states:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law…may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

Although Mr. Ammons attempts to characterize his extraordinary and compelling reason as brought under § 1B1.13(b)(5)'s catchall provision, to allow him to proceed under that subsection would provide an end-run around § 1B1.13(b)(6)'s requirement that in order to receive compassionate release for an unusually long sentence, a defendant must have already served at least 10 years of his term of imprisonment. *See* U.S.S.G. § 1B1.13(b)(6). Mr. Ammons has not done so, and cannot seek compassionate release for an unusually long sentence under § 1B1.13(b)(5)'s catchall provision. Further, § 1B1.13(c) specifically requires that changes in the law may only be considered in a determination as to whether the defendant meets the requirements of § 1B1.13(b)(6). Moreover, Mr. Ammons does not point to a change in the law that indicates

7

that his sentence is unusually long, and that would lead to a different guidelines calculation.[1] His argument that he is serving an unusually long sentence is not an extraordinary and compelling reason for compassionate release, whether considered alone or in combination with any other reason.[2]

### B.     Health Issues

Mr. Ammons argues in support of his Motion for Reduction in Sentence that he is 54 years old and suffers from obesity, asthma, hypertension, and edema.  [Filing No. 152 at 10.]  He states that his "breathing is so limited because of his asthma that there are multiple times throughout the day in which he cannot breathe," that he suffers from panic attacks due to "just thinking about not having…asthma pumps," that his obesity and diabetes worsen his other conditions and make "his bone-related problems more difficult to deal with," and that he is "a sickly inmate that is limited in mobility, protection, and treatment, who is an ideal candidate for relief."  [Filing No. 152 at 10-11 (quotation omitted).]  He argues that the BOP has not provided an "appropriate environment" and that his cell is too cold and he is deprived of appropriate clothing to keep him warm, which exacerbates his asthma.  [Filing No. 152 at 11.]

The Government argues in its response that while Mr. Ammons suffers from the conditions he identifies, he has not presented evidence showing that the BOP is not providing adequate

---

[1] The Court notes that Mr. Ammons' argument comparing actual to mixture may well be misplaced, given the large quantity of methamphetamine that he possessed.  Specifically, even if the Court considered the 4,957 grams of actual methamphetamine to be 4,957 grams of a mixture or substance containing a detectable amount of methamphetamine, the mandatory minimum sentence would be the same.  See 21 U.S.C. § 841(b)(1)(A)(viii).

[2] Additionally, Mr. Ammons cannot use a motion for compassionate release to challenge the reasonableness of his sentence.  See *United States v. Colon*, 2024 WL 3983324, at *1 (7th Cir. Aug. 29, 2024) (sentencing challenges may not be brought through a motion for compassionate release); *United States v. Martin*, 21 F.4th 944, 946 (7th Cir. 2021) (defendant "cannot use a motion for compassionate release to challenge a potential error…in his sentence").

treatment. [Filing No. 157 at 8-9.] Rather, it asserts, Mr. Ammons' medical records "show that [the] BOP is both aware of Ammons' medical conditions and that [the] BOP is attentive to treating them." [Filing No. 157 at 9.]

In his reply, Mr. Ammons argues that he continues to deal with his health issues, he must seek medical attention numerous times, he "struggles with the prescriptions and side effects," and his asthma, weight, and lack of mobility have not been properly addressed. [Filing No. 161 at 2.]

As relevant here, under Section 1B1.13(b)(1) of the recently amended United States Sentencing Guidelines, extraordinary and compelling reasons for release exist under the following two circumstances:

> (B) The defendant is –
>
>   (i)   suffering from a serious physical or medical condition,
>
>   (ii)  suffering from a serious functional or cognitive impairment, or
>
>   (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G § 1B1.13(b)(1)(B)-(C).

Mr. Ammons has failed to show that any of his medical conditions are life threatening, debilitating, or impact his ability to engage in self-care. His BOP medical records indicate ongoing treatment for asthma, hypertension, and diabetes. [*See* Filing No. 158-1; Filing No. 158-2; Filing No. 158-3.] His records further reflect that he has been treated multiple times for his conditions, including his asthma, has visited an outside radiologist, has received prescriptions medications and

9

an albuterol inhaler. [*See* Filing No. 158-1; Filing No. 158-2; Filing No. 158-3.] Records Mr. Ammons points to relate in part to his requests for an inhaler, but other records reflect that he was overusing his inhaler, so it was not lasting the prescribed 90 days but that, in any event, his medication was adjusted. [*See, e.g.*, Filing No. 158-1 at 2-6.] Mr. Ammons has not shown that his medical conditions prevent him from performing daily self-care activities or from benefiting from the medical resources available to him within the BOP.

Mr. Ammons also argues that the BOP is not providing adequate medical care for his conditions. Such an allegation might form the basis for relief in a civil suit filed in Mr. Ammons' district of incarceration, but it does not constitute grounds for a sentence reduction under § 3582(c)(1)(A). *United States v. Miller*, 2022 WL 2187555, at *1 (7th Cir. June 16, 2022). In short, Mr. Ammons' medical conditions are not an extraordinary and compelling reason for compassionate release, whether considered alone or in combination with any other factor.

The Court, in its discretion, finds that Mr. Ammons has not carried his burden to show that there are extraordinary and compelling reasons for his release, whether considered alone or in conjunction with any other reason. In any event, even if the Court found that extraordinary and compelling reasons exist, it also finds that Mr. Ammons is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). Mr. Ammons was responsible for a very large quantity of drugs – 4,957 grams of methamphetamine and 895.7 grams of fentanyl. [Filing No. 114 at 7.] These drugs are particularly dangerous to the public. Additionally, Mr. Ammons had already served time in federal prison for Conspiracy to Possess with Intent to Distribute and Distribution of Cocaine and Cocaine Base, [Filing No. 114 at 12], yet still committed the offense underlying this case. And significantly, he was disciplined in the BOP for possessing a charging cord and charging block in May 2023 and for possessing a

cell phone in November 2023. [Filing No. 158-4 at 1-4.] These circumstances indicate that Mr. Ammons is a danger to the safety of any other person or to the community, making compassionate release unwarranted.

In sum, the Court finds that Mr. Ammons has not presented extraordinary and compelling reasons to release him, whether considered alone or in conjunction with any other reason, and also finds that he is a danger to the safety of any other person or to the community. Given these determinations, the Court need not address whether the sentencing factors listed in 18 U.S.C. § 3553(a) weigh in favor of his release.

### III.
### CONCLUSION

For the reasons stated above, Mr. Ammons' Motion for Reduction in Sentence Pursuant to 18 U.S.C. 3582(c)(1)(A)(i), [152], is **DENIED**.

Date: 4/12/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**